# Exhibit 1

KARLENE J. ROGERS-ABERMAN, ESQ. (ID: 302962019)
LAW OFFICES OF STEPHENSON,
ACQUISTO & COLMAN, INC.
303 N. Glenoaks Blvd., Suite 700
Burbank, CA 91502
Telephone: (818) 559-4477
Attorneys for Plaintiff
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA *et seq.*

| | | |
|---|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, a public trust corporation, on behalf of the University of California, Irvine Medical Center | : : : : : : | **SUPERIOR COURT OF NEW JERSEY LAW DIVISION ESSEX COUNTY** **Docket No.** |
| Plaintiff, | : : | |
| v. | : : | **Civil Action** |
| HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, | : : : | **COMPLAINT** |
| Defendant. | : : | |

Plaintiff The Regents of the University of California, a public trust corporation, on behalf of the University of California, Irvine Medical Center ("UCI Medical Center") for its Complaint against Defendant HORIZON BLUE CROSS BLUE SHIELD (hereinafter "HORIZON") alleges as follows:

## INTRODUCTION

1. This is an action against HORIZON for breach of an implied-in-fact contract and *quantum meruit* arising from a business relationship between UCI Medical Center and HORIZON.

2. Plaintiff seeks compensatory damages, interest, and attorney's fees and costs.

## THE PARTIES

3. Plaintiff, UCI Medical Center, is a California non-profit, public benefit corporation organized and existing pursuant to the laws of the State of California. UCI Medical Center provided medical care to Patients (as such term is defined herein), who were HORIZON beneficiaries when such medical care was provided. UCI Medical Center has its principal place of operation in the City Irvine, County of Orange, and State of California.

4. Defendant,HORIZON is a New Jersey corporation which conducts business in all counties in Pennsylvania, and has its principal place of business at 3 Penn Plaza East, Newark, Essex County, New Jersey 07105.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to N.J. Const. art. VI, § 3, ¶ 2.

6. Defendant has transacted business in the State of New Jersey. Venue is proper because Essex is the county where Defendant regularly and systematically conducts business and is a county in which a substantial part of the events giving rise to the claims occurred.

## FACTUAL BACKGROUND

7. This action is founded upon various written contracts (the "Contracts"). The first is a Blue Shield Fee for Service Hospital Agreement effective July 15, 2010 between UCI Medical Center and California Physicians' Services, Inc., d.b.a. Blue Shield of California ("BSC")– a non-party to this action. The second is an Facility Agreement effective February 15, 2015 between UCI Medical Center and Anthem Blue Cross ("Anthem"), also a non-party.. Among other things, the Contracts obligated UCI Medical Center to medically treat individuals who were certain beneficiaries of non-BSC or non-Anthem health plans. Specifically, the

2

Contract obligated UCI Medical Center to medically treat individuals belonging to health plans financed, sponsored, and/or administered by member companies belonging to either the Blue Cross Blue Shield National Accounts Program, or Anthem's Managed Care Networks Plan Programs, of which HORIZON is one such member.

8. Although HORIZON was not a signatory to the Contracts, the Contracts nonetheless bound UCI Medical Center to treat HORIZON'S beneficiaries. The Contract also obligated UCI Medical Center to accept as payment in full monies received from Blue Cross Blue Shield National Program members (such as HORIZON) that were made at the discounted rates found within the Contracts .

9. On various dates between July 16, 2018 and December 3, 2018, UCI Medical Center provided medically necessary treatment to the individuals identified on the spreadsheet attached as Exhibit A to this Complaint (and which is incorporated herein by this reference as though set forth in full) (the "Patients") totaling $110,956.41 (3) claims.

10. UCI Medical Center is informed and believes and thereon alleges that at all relevant times Patients were beneficiaries of health plans sponsored, administered, and/or funded by HORIZON and that HORIZON is financially responsible for the medically necessary treatment provided to the Patients on the dates of service listed on Exhibit A.

11. Prior to or during the dates of service set forth in Exhibit A, UCI Medical Center notified HORIZON via BSC, of each Patients' admission and BSC, on behalf of HORIZON either provided authorization reference numbers or advised UCI Medical Center that no prior authorization was necessary.

12. On the dates of service set forth in Exhibit A, UCI Medical Center rendered medically necessary services, supplies and/or equipment to Patients until Patients became stable for discharge from UCI Medical Center.

13. UCI Medical Center's usual and customary charges for the medically necessary services, supplies and/or equipment rendered to Patients amounted to $332,204.54.

14. UCI Medical Center timely and properly submitted the bills containing said charges for the medically necessary services, supplies, and/or equipment rendered to Patients to BSC, which was the local plan, for payment by HORIZON which was the Patients' "home" plan.

15. HORIZON failed to fully and properly pay UCI Medical Center at the established rates for the medically necessary services, supplies, and/or equipment rendered to Patients, despite demands therefor, paying only $9,481.13.

16. HORIZON received premium payments for Patients' enrollment and coverage in HORIZON's respective health plans.

17. As a direct and proximate result of HORIZON's wrongful conduct, UCI Medical Center has suffered damages in an amount to be proven at trial but, after accounting for some member responsibility amounts, not less than the sum of $316,976.75, exclusive of interest, or, if payable pursuant to the Blue Shield of California contract, no less than $96,220.56.

## COUNT ONE
### BREACH OF IMPLIED IN FACT CONTRACT Against HORIZON

18. Plaintiff repeats the allegations contained in the preceding paragraphs as though set forth in full herein.

19. At all relevant times, the Contracts between UCI Medical Center and BSC, and UCI Medical Center and Anthem bound UCI Medical Center to treat beneficiaries not only of

4

health plans financed, sponsored, and/or administered by BSC and Anthem, but also beneficiaries of health plans financed, sponsored, and/or administered by member companies of the Blue Cross Blue Shield National Programs or the Anthem Manage Care Network Plan Program. One such member company is HORIZON. Thus, even though HORIZON never signed the Contracts, HORIZON is subject to its terms and, UCI Medical Center must nevertheless medically treat HORIZON members and accept payment, in full, from such member companies, with the payment received conforming to the rates found within the Contracts.

20. All HORIZON needed to do to take advantage of such medical treatment and discounted rates on behalf of its members/beneficiaries was to issue a "Blue Card" program identification card. The members/beneficiaries could then present their "Blue Card" program identification card to UCI Medical Center at admission, which signaled to UCI Medical Center that it must medically treat such patient pursuant to the terms of the Contracts and must accept payments at the discounted rates found in the Contracts even though HORIZON was not a signatory to the Contracts . Otherwise, UCI Medical Center would be in violation of its duties owed to BSC and/or Anthem.

21. In this way — by conduct alone and with no express agreement between them — an implied-in-fact contract arose between UCI Medical Center and HORIZON each time one of the Patients presented to UCI Medical Center their "Blue Card" program identification card and/or otherwise identified themself as being a member/beneficiary of a health plan financed, sponsored, and/or administered by a member company of the Blue Cross Blue Shield National Program or the Anthem Managed Care Network Plan Program.

22. Each of the Patients specified in Exhibit A presented a "Blue Card" program identification card issued by HORIZON and/or otherwise identified themself as belonging to a

5

health plan financed, sponsored, and/or administered by HORIZON at the time of their hospital stay at UCI Medical Center during the dates of service listed on Exhibit A.

23. Accordingly, each time one of the Patients sought medical treatment at UCI Medical Center and so identified themself, an implied-in-fact contract arose in which UCI Medical Center agreed to render to that Patient all medically necessary services, supplies, and/or equipment needed by that individual and secondarily agreed to accept as payment, in full, monies received from HORIZON that were in conformance to the discounted rates found in the Contracts . In return, HORIZON agreed to pay for such care, albeit at the appropriate discounted rate regarding such care.

24. UCI Medical Center's usual and customary charges for rendering the medically necessary services, supplies, and/or equipment to the Patients set forth in Exhibit A, amounted to $110,956.41. At the rates found within the Contracts , HORIZON should have paid an aggregate amount of $110,259.41. However, HORIZON only paid $34,412.36, leaving a deficit of $75,847.05, which amounted to a breach of its implied-in-fact contract with UCI Medical Center.

25. No express written contract between HORIZON and UCI Medical Center existed to prescribe payment for the medically necessary services, supplies, and/or equipment rendered to Patients and UCI Medical Center did not perform those services gratuitously. Rather, HORIZON knew and understood that UCI Medical Center rendered such treatment with the expectation of being paid the discounted rates under the Contracts and through the Blue Card program.

26. Prior to the treatment rendered by UCI Medical Center, through industry custom and practice, HORIZON impliedly agreed, promissorily impliedly expressed and understood that UCI Medical Center would render medically necessary care to HORIZON beneficiaries, submit

bills for such care to HORIZON, and that HORIZON would pay the discounted rates under the Contracts to UCI Medical Center for the necessary medical treatment rendered to Patients, rather than Patients themselves (except for co-payments, deductibles, and co-insurance amounts, if any).

27. Specifically, prior to the dates that UCI Medical Center admitted Patients to its facilities for medical services, UCI Medical Center contacted HORIZON via BSC or Anthem, the local plans, to verify Patients' healthcare eligibility under a HORIZON health plan, to obtain authorization for the medical services rendered and to be rendered, and to establish its right to be paid by HORIZON at the discounted rates under the Contracts for such care. In response, BSC and Anthem represented that the respective Patients were beneficiaries of one of HORIZON's health plans, provided authorization where necessary (or indicated that none was needed), and approved admission of the Patients.

28. At no time prior to treatment did HORIZON represent that it would not pay the discounted rates under the Contracts to UCI Medical Center for the necessary medical treatment rendered to Patients.

29. Through UCI Medical Center's treating the Patients, UCI Medical Center's initiation of contact with HORIZON as described above, and HORIZON instructing the Patients to present their HORIZON-issued "Blue Card" membership identification to UCI Medical Center, Plaintiff and Defendant entered into an implied-in-fact contract. The Contracts were also formed through industry custom and practice, as well as Plaintiff and Defendant's prior and on-going course of conduct vis-à-vis the "Blue Card" program. Prior course of conduct included, among other things:

    a)     HORIZON's issuance of identification cards to Patients;

b) HORIZON's instructing Patients to present such identification cards to medical providers so as to give assurances to those medical providers that such care would be paid for;

c) UCI Medical Center communicating with HORIZON to ask for authorizations to render medical care to Patients and HORIZON issuing authorizations or advising UCI Medical Center that no prior authorization was necessary for such care;

d) HORIZON communicating to UCI Medical Center the medical eligibility benefits for Patients without advising UCI Medical Center that HORIZON would not make full payment of the discounted rates under the Contracts for the services to be provided to Patients; and

f) HORIZON requesting that UCI Medical Center send HORIZON clinical information and medical records.

30. In addition, prior course of conduct by HORIZON included UCI Medical Center submitting claims to HORIZON and in response, HORIZON properly paying the discounted rates under the Contracts for those claims. Over the last five (5) years, UCI Medical Center has billed numerous claims and HORIZON has satisfactorily paid on a number of claims submitted by UCI Medical Center in the near identical manner and method as the facts alleged herein.

31. HORIZON directly and deliberately benefited from those services by prompting, through its words and prior and ongoing conduct, and through the custom and practice in the healthcare industry, that UCI Medical Center perform those services on Patients who were beneficiaries of HORIZON, thus fulfilling HORIZON's obligation to secure medically necessary healthcare for its beneficiaries. When Patients received those services, the express insurance

coverage agreement made between HORIZON and Patients was satisfied and HORIZON was able to retain rightfully the premiums paid on behalf of Patients for enabling Patients to receive the medical care performed by UCI Medical Center. Further, UCI Medical Center directly conferred a benefit upon HORIZON when it helped HORIZON make good on promises HORIZON made to its own members/beneficiaries that it would arrange for them to receive timely medical care, when necessary, at a first-rate medical facility.

32. UCI Medical Center provided medically necessary care to HORIZON beneficiaries as described above.

33. UCI Medical Center properly billed HORIZON for the medically necessary services provided to Patients as listed in Ex. A.

34. HORIZON breached the implied-in-fact contract by paying only $34,412.36, resulting in an aggregate underpayment of $75,847.05, per the discounted rates under the Contracts , for the medical services performed by UCI Medical Center.

35. UCI Medical Center performed all conditions required on its part to be performed in accordance with the terms and conditions of the implied-in-fact contract.

36. HORIZON breached the implied-in-fact contract by underpaying UCI Medical Center for the medically necessary services, supplies and/or equipment rendered or supplied to Patients.

37. As a direct and proximate result of HORIZON's breach of the implied-in-fact contract, UCI Medical Center suffered damages in an amount to be proven at trial but not less than the sum of $75,847.05, exclusive of interest.

38. WHEREFORE, UCI Medical Center prays this Court enter judgment in its favor and against HORIZON as follows:

a) For the principal sum of $75,847.05;

b) For applicable interest on such principal sum, court costs; and reasonable attorney's fees; and

c) For such other and further relief as the Court deems just and proper.

**COUNT TWO**
**QUANTUM MERUIT (IN THE ALTERNATIVE) Against DEFENDANT**

39. Plaintiff repeats the allegations contained in the preceding paragraphs as though set forth in full herein.

40. On the dates of service set forth in Exhibit A, UCI Medical Center provided emergency and/or medically necessary care to Patients.

41. In the alternative, assuming arguendo that it is determined that no express or implied-in-fact contract between HORIZON and UCI Medical Center existed, and/or that such a contract cannot be enforced as to the payment for the medically necessary services, supplies and/or equipment rendered to Patients, Plaintiff should nevertheless be fully paid under the common law doctrine of *quantum meruit.*

42. UCI Medical Center did not perform these services gratuitously. Rather, HORIZON, by its words and prior and ongoing conduct, and through the custom and practice in the healthcare industry, knew and understood that UCI Medical Center rendered such treatment with the expectation of being paid.

43. Prior to the treatment rendered by UCI Medical Center to Patients, through industry custom and practice, HORIZON impliedly agreed and understood that UCI Medical Center would render medically necessary services to HORIZON beneficiaries, submit bills for such care to HORIZON, and that HORIZON would pay the usual and customary value to UCI Medical Center for the necessary medical treatment rendered to Patients, rather than Patients themselves (except for co-payments, deductibles, and co-insurance amounts, in any).

44. Specifically, prior to the dates that UCI Medical Center admitted Patients to its facilities for medical services, UCI Medical Center contacted HORIZON via the local plans, BSC and Anthem, to verify Patients' healthcare eligibility under a HORIZON health plan, to obtain authorization for the medical services rendered and to be rendered, and to establish its right to be paid by HORIZON the usual and customary value for such care.  In response, HORIZON represented that Patients were beneficiaries of one of HORIZON's health plans, provided authorization numbers or advised that no authorization was necessary, and approved admission of Patients.

45. At no time prior to treatment did HORIZON represent that it would not pay the usual and customary value to UCI Medical Center for the necessary medical treatment rendered to Patients and at no time did UCI Medical Center represent that it would perform the services gratuitously.

46. By treating Patients and initiating contact with HORIZON as described above, UCI Medical Center provided a benefit to HORIZON and HORIZON failed to compensate UCI Medical Center properly for that received benefit, despite the prior and on-going course of conduct between UCI Medical Center and HORIZON.  Prior course of conduct included, among other things:

11

a)     HORIZON's issuance of identification cards to Patients;

b)     HORIZON's instructing Patients to present such identification cards to medical providers so as to give assurances to those medical providers that such care would be paid for;

c)     UCI Medical Center communicating with HORIZON to ask for authorization to render medical care to Patients and HORIZON issuing authorization or advising UCI Medical Center that no prior authorization was necessary for that care;

d)     HORIZON communicating to UCI Medical Center the medical eligibility benefits for Patients without advising UCI Medical Center that HORIZON would not make full payment of the usual and customary value of the services to be provided to Patients;

f)     HORIZON requesting that UCI Medical Center send HORIZON clinical information and medical records.

47.     In addition, prior course of conduct by HORIZON included UCI Medical Center submitting claims to HORIZON and in response, HORIZON properly paying the usual and customary value of those claims.  Over the last five (5) years, UCI Medical Center has billed numerous claims and HORIZON has satisfactorily paid on a number of claims submitted by UCI Medical Center in the near identical manner and method as the facts alleged herein.

48.     In addition, HORIZON pre-verified Patients' coverage and eligibility and either authorized the treatments or advised that no authorization was necessary.

49.     HORIZON's provision of authorizations for the treatments, or its statements that no auth was needed were implied requests to UCI Medical Center to perform those services on behalf of Patients.

12

50. UCI Medical Center rendered such treatments after the implied requests for such services by HORIZON and UCI Medical Center intended those services to benefit, among others, HORIZON.

51. HORIZON directly and deliberately benefited from those services by prompting, through its words and prior and ongoing conduct, and through the custom and practice in the healthcare industry, that UCI Medical Center perform those services on Patients who were beneficiaries of HORIZON, thus fulfilling HORIZON's obligation to secure medically necessary healthcare for its beneficiaries. When Patients received those services, the express insurance coverage agreement made between HORIZON and Patients was satisfied and HORIZON was able to retain rightfully the premiums paid on behalf of Patients for enabling Patients to receive the medical care performed by UCI Medical Center. Further, UCI Medical Center directly conferred a benefit upon HORIZON when it helped HORIZON make good on promises HORIZON made to its own members/beneficiaries that it would arrange for them to receive timely medical care, when necessary, at a first-rate medical facility.

52. UCI Medical Center provided medically necessary care to the HORIZON beneficiaries as described above.

53. UCI Medical Center properly billed HORIZON for the medically necessary services provided to Patients as listed in Exhibit A.

54. UCI Medical Center is informed and believes and alleges thereon that HORIZON expressly instructed its beneficiaries (including Patients) to seek medical care in an emergency from the nearest medical provider and for such beneficiaries to tell the emergency medical provider to send HORIZON the bills for such care for payment by HORIZON (except for co-payments, deductibles and co-insurance amounts, if any).

13

55. After UCI Medical Center rendered the care specified in Exhibit A to Patients, UCI Medical Center properly and timely billed HORIZON for such care.

56. The reasonable value of the medical care provided was and is the usual and customary charges of those services which are the total billed charges in the bills submitted to HORIZON by UCI Medical Center for $110,956.41. HORIZON paid only $34,412.36, leaving a deficit of $76,544.05 owed to UCI Medical Center.

57. Despite demands thereon, HORIZON has refused to pay fully UCI Medical Center for the medical care rendered to Patients as set forth in Exhibit A.

58. UCI Medical Center did not perform these services gratuitously, but rather expected to be paid the reasonable and customary value for such services which amounts to $110,956.41.

59. HORIZON unjustly benefitted by not paying fully UCI Medical Center for the reasonable value of such services. HORIZON promised its beneficiaries (including Patients) that it would pay medical providers who provided emergency and necessary medical treatment to those beneficiaries in exchange for Patients' premiums, collected such premiums and then refused despite demands to fully and properly pay UCI Medical Center the reasonable and customary value of the medical care rendered to HORIZON's beneficiaries as specified in Exhibit A. HORIZON accepted the services UCI Medical Center provided to Patients as demonstrated by acts including but not limited to issuing authorizations, ratifying the treatment through partial payments, and collection of premiums.

60. As a direct and proximate result of HORIZON's misconduct, UCI Medical Center has suffered damages in an amount to be proven at trial but not less than the sum of $76,544.05, exclusive of interest.

61. WHEREFORE, UCI Medical Center prays this Court enter judgment in its favor and against HORIZON as follows:

a) For the principal sum of $76,544.05;

b) For interest on such principal sum; court costs; and reasonable attorney's fees; and

c) For such other and further relief as the Court deems just and equitable.

Respectfully submitted,

LAW OFFICES OF STEPHENSON,
ACQUISTO & COLMAN, INC.

By: _____
KARLENE J. ROGERS-ABERMAN, ESQ.
500 N. Brand Blvd. Suite 1450
Glendale, CA 91203
818-559-4477 (Phone)
818-559-5484 (Fax)
kaberman@sacfirm.com
*Attorneys for Plaintiff*
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, a public trust corporation, on behalf of the University of California, Irvine Medical Center

Dated: June 17, 2024

## DESIGNATION OF TRIAL COUNSEL

In accordance with <u>Rule</u> 4:25-4, Plaintiff[ hereby designates KARLENE J. ROGERS-ABERMAN as trial counsel in this action.

LAW OFFICES OF STEPHENSON,
ACQUISTO & COLMAN, INC.
*Attorney[s] for Plaintiff*
UCI Medical Center

_____
By: KARLENE J. ROGERS-ABERMAN

Dated:  June 17, 2024

## RULE 4:5-1 CERTIFICATION

I hereby certify that to the best of my knowledge, information, and belief, the within matter in controversy is not the subject of any other pending or contemplated court actions or arbitration proceedings.

I further certify that to the best of my knowledge, information, and belief, I am not aware of any nonparties who should be joined in the action,

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

LAW OFFICES OF STEPHENSON,
ACQUISTO & COLMAN, INC.
*Attorney[s] for Plaintiff*
THE REGENTS OF THE UNIVERSITY OF
CALIFORNIA, a public trust corporation, on
behalf of the University of California, Irvine
Medical Center

_____
By: KARLENE J. ROGERS-ABERMAN

Dated: June 17, 2024

## RULE 1:38-7(b) CERTIFICATION

I certify that confidential personal identifiers have been redacted from the documents now submitted to the Court and will be redacted from all documents submitted to the Court in the future in accordance with Rule 1:38-7(b).

LAW OFFICES OF STEPHENSON,<br>
ACQUISTO & COLMAN, INC.<br>
*Attorney[s] for Plaintiff*<br>
THE REGENTS OF THE UNIVERSITY OF<br>
CALIFORNIA, a public trust corporation, on<br>
behalf of the University of California, Irvine<br>
Medical Center

_____
By: KARLENE J. ROGERS-ABERMAN

Dated: June 17, 2024

**EXHIBIT A**

18

**UNIVERSITY OF CALIFORNIA, IRVINE HEALTHCARE V. HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY**

**FC 27547**

| No. | File Number | Admit Date | Discharge Date | Total Charges | Total Paid | Underpaid | Issue |
|---|---|---|---|---|---|---|---|
| 1 | 05000431494I | 12/3/2018 | 12/3/2018 | $4,381.00 | $0.00 | $3,684.00 | IMPROPER RATE |
| 2 | 050004654976 | 10/23/2018 | 11/2/2018 | $49,703.09 | $34,412.36 | $15,290.73 | DOWN-CODING |
| 3 | 050003947527 | 7/16/2018 | 7/18/2018 | $56,872.32 | $0.00 | $56,872.32 | UNTIMELY |
|   |   |   |   | $110,956.41 | $34,412.36 | $75,847.05 |   |