<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, a public trust corporation, on behalf of the University of California, Irvine Medical Center,<br><br>                Plaintiff,<br><br>                v.<br><br>HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY,<br><br>                Defendant. | Case No. 2:24-cv-7482 (BRM) (CLW)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant Horizon Blue Cross Blue Shield of New Jersey's ("Horizon") Motion to Dismiss ("Motion") (ECF No. 13) Plaintiff The Regents of the University of California, a Public Trust Corporation, on Behalf of the University of California, Irvine Medical Center's ("UCI Medical Center") Complaint (ECF No. 1-1) as pre-empted by the Employee Retirement Income Security Act ("ERISA"), or, alternatively, for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). UCI Medical Center opposed (ECF No. 17), and Horizon replied (ECF No. 21). Having reviewed and considered the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Horizon's Motion to Dismiss (ECF No. 13) is **GRANTED** without prejudice.

1

I.  **BACKGROUND**

For purposes of this Motion, the Court accepts the factual allegations in the complaint as true and draws all inferences in the light most favorable to the plaintiff. *See Philips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996).

A.  Factual Background

This matter involves allegations of breach of implied contract and *quantum meruit* arising out of Horizon's alleged underpayment of claims submitted by UCI Medical Center on behalf of three patients. (ECF No. 1-1 ¶ 1.) UCI Medical Center is a non-profit public benefit corporation under California law with its principal place of operation in Irvine, California. (*Id.* ¶ 3.) Horizon is a New Jersey corporation with its principal place of business in Newark, New Jersey. (*Id.* ¶ 4.)

UCI Medical Center alleges the action stems from two written contracts. (*Id.* ¶ 7.) The first is an agreement between UCI Medical Center and California Physicians' Services, Inc., d.b.a. Blue Shield of California ("BSC") dated July 15, 2010, and the second, dated February 15, 2015, is an agreement between UCI Medical Center and Anthem Blue Cross ("Anthem") (the "Contracts"). (*Id.*) Both Contracts required UCI Medical Center to provide medical treatment to individuals "belonging to health plans financed, sponsored, and/or administered by member companies belonging to either the Blue Cross Blue Shield National Accounts Program, or Anthem's Managed Care Networks Plan Programs" (the "Programs"). (*Id.*) UCI Medical Center alleges Horizon is one such company. (*Id.*) UCI Medical Center purports the Contracts required it to treat Horizon beneficiaries, despite Horizon not being a signatory, and further required UCI Medical Center to

2

accept payment from any Blue Cross Blue Shield National Accounts Program member at the rates detailed therein. (*Id.* ¶ 8.)

Between July 16, 2018, and December 3, 2018, UCI Medical Center provided medically necessary treatment to three patients who "were beneficiaries of health plans sponsored, administered, and/or funded by Horizon," for which UCI Medical Center alleges Horizon is financially responsible. (*Id.* ¶¶ 9–10.) UCI Medical Center alleges it notified Horizon via BSC of each patient's admission and received either authorization from BSC with reference numbers or was told by BSC that no such authorization was needed. (*Id.* ¶ 11.) During the relevant period, UCI Medical Center provided "medically necessary services, supplies and/or equipment" to patients totaling $332,204.54, which UCI Medical Center alleges is usual and customary. (*Id.* ¶¶ 12–13.) UCI Medical Center submitted bills for treatment rendered to BSC "for payment by Horizon, which was the Patients' 'home' plan," but Horizon only paid UCI Medical Center $9,481.13, despite receiving "premium payments for Patients' enrollment and coverage in Horizon's respective health plans." (*Id.* ¶¶ 14–16.) Ultimately, UCI Medical Center alleges it suffered damages either in the amount of $316,976.75 (exclusive of interest) "for some member responsibility amounts," or at least $96,220.56 under the BSC contract, due to Horizon's wrongful conduct. (*Id.* ¶ 17.)

UCI Medical Center brings this action for breach of implied-in-fact contract (*id.* ¶¶ 18–38), or, alternatively, *quantum meruit* (*id.* ¶¶ 39–61) against Horizon.

### B. Procedural History

This action was originally filed in the Superior Court of New Jersey, Essex County. (*See* ECF No. 1-1.) Horizon removed the matter to this Court on July 1, 2024, on the basis of federal diversity jurisdiction. (ECF No. 1 ¶¶ 4–9.) On September 3, 2024, in accordance with the Court's

preferences, Horizon filed a pre-motion conference letter outlining its intent to move for dismissal and requesting the Court's consent to proceed with motion practice. (ECF No. 6.) UCI Medical Center filed a responsive letter on September 10, 2024. (ECF No. 8.) On September 11, 2024, the Court issued a text order in which it determined a pre-motion conference would not be beneficial and instructed the parties to proceed with motion practice. (ECF No. 9.) After the parties met and conferred, Horizon submitted a letter on September 13, 2024, outlining the briefing schedule for the pending motion to dismiss (ECF No. 11), which was adopted by the Court in a consent order dated September 16, 2024 (ECF No. 12).

Horizon moved to dismiss the Complaint on October 9, 2024. (ECF No. 13.) UCI Medical Center opposed on October 21, 2024 (ECF No. 17), and Horizon replied on November 22, 2024 (ECF No. 21).

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228 ("[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545 (alterations in original). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Instead, assuming factual allegations in the complaint are true, those "[f]actual

4

allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the Court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must

now set out "sufficient factual matter" to show that the claim is facially plausible. *Iqbal*, 556 U.S. at 677. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, as a general rule, the Court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

**III.  DECISION**

Horizon asserts UCI Medical Center's two state law causes of action are impermissible attempts to circumvent ERISA because they "ha[ve] a connection with or reference to" an ERISA plan. (*Id.* at 9.) Specifically, Horizon contends UCI Medical Center's claims "relate to" plans governed by ERISA because the Complaint refers to UCI Medical Center's efforts to "'contact[] Horizon via BSC or Anthem' to 'verify Patients' healthcare eligibility under a Horizon health plan,' to 'obtain authorization for the medical services rendered . . . ' to the Patients, to 'establish its right to be paid by Horizon,'" and to submit its medical bills to BSC for payment by Horizon pursuant to the patients' plans. (*Id.* at 10.) Horizon contends the Complaint itself "recognizes that Plaintiff's claims for [the Patients] were all denied, in whole or in part, due to the terms and

6

conditions of the Patients' respective ERISA-governed [p]lans." (*Id.* (citing ECF No. 1-1, Ex. A, at 1).) Hence, "the incontrovertible underlying fact is that all of the Complaint's allegations are grounded in the scope of coverage under the [ERISA p]lans to determine what benefits are available to the members." (*Id.*) Horizon notes UCI Medical Center's contention that Horizon is bound by the Contracts depends on the existence of a separate agreement with Horizon independent of the ERISA-governed plans, which it argues UCI Medical Center fails to sufficiently allege merely by pointing to the Horizon-issued insurance cards carried by patients. (*Id.* at 11.) Horizon contends any relationship it has with UCI Medical Center is indivisibly linked to the benefits to which the patients were entitled under the ERISA-governed plans administered by Horizon. (*Id.* at 13.) As for the payments Horizon remitted to UCI Medical Center on some patient claims, Horizon clarifies those payments were based on its assessment of their plan benefits. (*Id.* at 6.)

Additionally, to the extent UCI Medical Center relies on BSC's authorization reference numbers or advice that no prior authorization was needed to form a basis to contest the plans at issue were covered by ERISA, Horizon asserts any such authorization "would only have indicated that the Services were covered under the terms of the Plan(s), and would not have bound Horizon to the terms of Plaintiff's Contract with BSC or Anthem." (*Id.* at 12.) In support, Horizon cites to cases from this District rejecting similar attempts to "transform preauthorization calls into independent agreements." (*Id.* at 12 (citing *Advanced Orthopedics and Sports Med. Inst., P.C. v. Oxford Health Ins., Inc.*, Civ. A. No. 21-17221, 2022 WL 1718052, at *8 (D.N.J. May 27, 2022); *Sleep Tight Diagnostic Center, LLC v. Aetna, Inc.*, 399 F. Supp. 3d 241, 250–51 (D.N.J. 2019);

*Glastein v. Horizon Blue Cross Blue Shield of America*, Civ. A. No. 17-9783, 2018 WL 3849904, at *3 (D.N.J. Aug. 13, 2018).)

UCI Medical Center opposes the suggestion that ERISA pre-empts its claims, citing cases in this District in which courts have declined to dismiss a complaint on the grounds the state law claims were subject to federal pre-emption under ERISA. (ECF No. 17 at 8–9 (citing *Samra Plastic and Reconstructive Surgery v. Cigna Health and Life Ins. Co.*, Civ. A. No. 23-22521, 2024 WL 3444273 (D.N.J. July 17, 2024); *East Coast Spine Joint and Sports Med. v. Anthem Blue Cross Blue Shield*, Civ. A. No. 22-04841, 2023 WL 3559704 (D.N.J. Apr. 27, 2023); *Gotham City Orthopedics, LLC v. United HealthCare Ins., Co.*, Civ. A. No. 21-11313, 2022 WL 111061 (D.N.J. Jan. 12, 2022); *Comprehensive Spine Care, P.A. v. Oxford Health Ins., Inc.*, Civ. A. No. 18-10036, 2018 WL 6445593 (D.N.J. Dec. 10, 2018); *Glastein v. Aetna, Inc.*, Civ. A. No. 18-9262, 2018 WL 4562467 (D.N.J. Sept. 24, 2018)).) Rather than seeking benefits under ERISA-governed plans, which it claims is evidenced by the fact it sued Horizon and "not the ERISA plans," UCI Medical Center contends Horizon "was obligated to pay certain discounted rates that existed in a *contract offered under [the Blue Card] Program* to providers like UC Irvine Health." (*Id.* at 9–10.) UCI Medical Center claims Horizon's duty to pay under the Contracts is based not only the pre-authorizations (or notice no such authorization was needed) given by BSC, but on Horizon's participation in the Blue Card Program, Horizon's ratification through partial payment, industry custom and practice, and prior conduct between the parties. (*Id.* at 10.) UCI Medical Center suggests Horizon incorrectly characterizes this action as one in which a plan beneficiary seeks payment of benefits owed, given it is not a beneficiary but a medical provider, and notes the majority of the cases on which Horizon relies involve claims brought by employee beneficiaries seeking payment of plan benefits. (*Id.* at 10–11.) As support, UCI Medical Center points to the

anti-assignment provision in one of the plan documents attached to one of Horizon's supporting declarations, which expressly forbids assigning benefits to any provider. (*Id.* at 12–13.) This case, in UCI Medical Center's estimation, is not a dispute over a right to payment because Horizon impliedly accepted UCI Medical Center's entitlement to payment through partial payment, but one concerning the specific amount of payment owed. (*Id.* at 13–18.) Finally, UCI Medical Center requests the Court grant it leave to amend the Complaint in the event the Court grants Horizon's motion. (*Id.* at 29.)

In reply, Horizon reiterates that UCI Medical Center's claims are expressly pre-empted by ERISA, arguing "[w]ithout the [p]lans, there would be no dispute before the Court," plans which UCI Medical Center does not dispute are governed by ERISA. (ECF No. 21 at 1–2.) Horizon also argues UCI Medical Center's allegations that Horizon was obligated to pay certain rates under the Contracts are conclusory and crafted to ignore the plans' terms concerning coverage, pre-authorization of services, and timing and procedures for claim submission. (*Id.* at 3–4.)

ERISA provides two kinds of pre-emption against state law claims. With respect to the first, the Supreme Court has recognized 29 U.S.C. § 1132(a) (ERISA § 502(a)) as "one of those provisions with such 'extraordinary pre-emptive power' that it converts an ordinary state common law complaint into one stating a federal claim." *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 399–400 (3d Cir. 2004) (quoting *Aetna Health Inc. v. Davilla*, 542 U.S. 200, 211 (2004)). The second kind of pre-emption, ERISA § 514, which is relevant here, expressly preempts "any and all State laws insofar as they may now or hereafter *relate to any employee benefit plan*." 29 U.S.C. § 1144(a) (emphasis added) ("§ 514"). The Supreme Court has explained "the phrase 'relate to' [in § 514 is] given its broad commonsense meaning, such that a state law 'relate[s] to' a benefit plan in the normal sense of the phrase, if it

has a connection with or reference to such a plan." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987) (internal citation omitted). "A state law cause of action 'relates to' an employee benefits plan if, without the plan, there would be no cause of action." *Est. of Jennings v. Delta Air Lines, Inc.*, 126 F. Supp. 3d 461, 466 (D.N.J. 2015) (internal citations omitted).

Here, the Court finds the state law claims advanced in the Complaint are expressly pre-empted by ERISA. As a preliminary matter, UCI Medical Center concedes the underlying medical insurance benefits plans are governed by ERISA. (*See, e.g.*, ECF No. 17 at 10 ("[t]ellingly, Plaintiff has sued Horizon, not the ERISA plans").) The Court reads the Complaint to generally allege a scenario in which the Contracts compelled UCI Medical Center to provide care for three patients covered by ERISA-governed plans (a fact which UCI Medical Center concedes) administered by Horizon and required Horizon to pay for that care at specified contract rates without Horizon ever agreeing to the Contracts or being informed of the patient's cases. Although the Complaint does contain allegations concerning at least some of UCI Medical Center's obligations under its Contracts with BSC and Anthem, respectively, the Court finds the Complaint fails to allege sufficient details showing Horizon's own obligations under the same, including with respect to both: (1) the Programs, their relevant terms, and how and to what effect they bind Horizon with respect to this action; and (2) the Contracts, their operative terms, and how UCI Medical Center interpreted and applied them in each patient's case such that Horizon was reasonably expected to pay for the treatment.

Without these details, the Court is left to speculate about the effect of the alleged relationship between membership in one or both Programs and performance under one or both Contracts, and, importantly, how the interplay between the Programs and the Contracts gave rise to the alleged payment obligations for Horizon that is independent of its pre-existing administrative

10

responsibilities under the ERISA-governed plans. As a result, the Complaint could be read as an attempt by UCI Medical Center to obscure that the benefits and costs in dispute relate to ERISA-governed plans. *See Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 278 (3d Cir. 2001) (noting the "expansive sweep of the pre-emption clause" based on the rationale "the decision whether a requested benefit or service is covered by the ERISA plan falls within the scope of the administrative responsibilities of the HMO or insurance company, and therefore 'relates to' to the employee benefit plan"); *Peer Group for Plastic Surgery, PA v. United Healthcare Services, Inc.*, 2024 WL 1328134, at *6 (D.N.J. Mar. 28, 2024) (finding no independent basis for duty to pay existed, in part, because agreements explicitly referred to patients' plans); *but see Plastic Surgery Center, P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 223–24, 233 (3d Cir. 2020) (finding state law claims not pre-empted by ERISA because an alleged direct telephone conversation between plaintiff provider and defendant insurer about patients' services gave rise to obligations independent of ERISA-governed plan).

The Court finds UCI Medical Center's arguments concerning purported ratification through partial payment, the patients' insurance cards creating an implied contract, the parties' prior course of conduct, and industry custom to be unavailing. UCI Medical Center argues Horizon's payments of certain amounts for each patient's treatment were partial payments under the Contracts which should be interpreted as ratification of contractual obligations but cites to an exhibit which lists Horizon's purported assessment based on each patient's ERISA-governed plan as the "issue" behind each alleged "underpa[yment]." (ECF No. 1-1, Ex. A, at 1.)  Given the absence of sufficient factual allegations concerning the Programs, Contracts, and the relationship between the two, the explanation for Horizon's payments can be just as easily supplied by Horizon's argument the payments were made pursuant to the terms of the plans (ECF Nos. 13 at

11

6; 21 at 2 n.1), which UCI Medical Center seems to concede (ECF No. 1-1, Ex. A, at 1) and which the patients' insurance cards themselves identify (ECF No. 1-1 ¶¶ 20–22, 29(a)–(b), 46(a)–(b).) UCI Medical Center alleges no facts regarding the parties' course of conduct or industry custom, and the Court may not speculate to supply them. *See Twombly*, 550 U.S. at 555.

Accordingly, Horizon's Motion to Dismiss (ECF No. 13) is **GRANTED** without prejudice. The Court therefore will not address the merits of the state law claims.

**IV.    CONCLUSION**

For the reasons set forth above, and for good cause having been shown, Horizon's Motion to Dismiss (ECF No. 13) is **GRANTED** without prejudice and with leave to amend consistent with the guidance in this Opinion. An appropriate order follows.

Dated:  May 27, 2025                                            */s/ Brian R. Martinotti*
                                                                          HON. BRIAN R. MARTINOTTI
                                                                          UNITED STATES DISTRICT JUDGE