<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, a public trust corporation, on behalf of the University of California, Irvine Medical Center, | Case No. 2:24-cv-7482 (BRM) (CF) |
| Plaintiff, | |
| v. | **OPINION** |
| HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, | |
| Defendant. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Horizon Blue Cross Blue Shield of New Jersey's ("Horizon") Motion to Dismiss ("Motion") (ECF No. 40-1) the Amended Complaint of Plaintiff the Regents of the University of California, a Public Trust Corporation, on Behalf of the University of California, Irvine Medical Center ("UCI Medical Center") (ECF No. 30). UCI Medical Center filed an opposition (ECF No. 41) and Horizon filed its reply (ECF No. 42). Having reviewed and considered the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78(b), for the reasons set forth below and for good cause having been shown, Horizon's Motion to Dismiss is **GRANTED** and UCI Medical Center's Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.

## I.    BACKGROUND

### A.    Factual Background

This matter involves allegations of breach of implied contract and *quantum meruit* arising out of Horizon's alleged underpayment of claims submitted by UCI Medical Center on behalf of three patients. (ECF No. 30 ¶ 1.) UCI Medical Center is a non-profit public benefit corporation formed under California law with its principal place of operation in Irvine, California. (*Id.* ¶ 3.) Horizon is a New Jersey corporation with its principal place of business in Newark, New Jersey. (*Id.* ¶ 4.)

UCI Medical Center's theory of recovery relies on two written contracts. (*Id.* ¶¶ 7, 8.) The first is an agreement between UCI Medical Center and California Physicians' Services, Inc., d.b.a. Blue Shield of California ("BSC") dated July 15, 2010. (*Id.* ¶ 9.) The second agreement, dated February 15, 2015, is an agreement between UCI Medical Center and Anthem Blue Cross ("Anthem") (the "Provider Contracts"). (*Id.*) Both of the Provider Contracts required UCI Medical Center to provide medical treatment to individuals "belonging to health plans administered by member companies belonging to either the Blue Cross Blue Shield National Accounts Program[] or Anthem's Managed Care Networks Plan Programs." (*Id.* ¶ 12.) UCI Medical Center alleges Horizon is one such company. (*Id.*) UCI Medical Center contends the Provider Contracts required it to treat Horizon's beneficiaries, despite Horizon not being a signatory, and further required UCI Medical Center to accept payment from any Blue Cross Blue Shield National Accounts Program member at the rates detailed therein. (*Id.* ¶ 8.)

Between July 16, 2018, and December 3, 2018, UCI Medical Center provided medically necessary treatment to three patients who "were beneficiaries of health plans administered by Horizon," for which UCI Medical Center alleges Horizon is financially responsible. (*Id.* ¶ 21.)

2

UCI Medical Center alleges it notified Horizon via BSC and Anthem of each patient's admission and received either authorization from BSC with reference numbers or was told by BSC that no such authorization was needed. (*Id.* ¶ 22.) During the relevant period, UCI Medical Center provided "medically necessary services, supplies and/or equipment" to patients totaling $110,956.41, which UCI Medical Center alleges is usual and customary. (*Id.* ¶ 24.) UCI Medical Center submitted bills for treatment rendered to BSC "for payment by Horizon, which was the Patients' 'home' plan," but Horizon only paid UCI Medical Center $34,412.36, rather than the "discounted in-network rates within the Provider Contracts." (*Id.* ¶ 46.) Ultimately, UCI Medical Center alleges it suffered damages either in the amount of $75,847.05 (exclusive of interest) or, if the Provider Contracts do not apply, the "*quantum meruit* value of the services" of $76,544.05, due to Horizon's wrongful conduct. (*Id.* ¶ 17.)

### B.    Procedural Background

This action was originally filed in the Superior Court of New Jersey, Essex County. (*See* Compl. and Notice of Removal (ECF No. 1-1).) Horizon removed the matter to this Court on July 1, 2024, based on federal diversity jurisdiction. (ECF No. 1 ¶¶ 4–9.) On September 3, 2024, in accordance with the Court's judicial preferences, Horizon filed a pre-motion conference letter outlining its intent to move for dismissal and requesting the Court's consent to proceed with motion practice. (ECF No. 6.) UCI Medical Center filed a responsive letter on September 10, 2024. (ECF No. 8.) On September 11, 2024, the Court issued a text order in which it determined a pre-motion conference would not be beneficial and instructed the parties to proceed with motion practice. (ECF No. 9.) After the parties met and conferred, Horizon submitted a letter on September 13, 2024, outlining the briefing schedule for the pending motion to dismiss (ECF No. 11), which was adopted by the Court in a consent order dated September 16, 2024 (ECF No. 12).

Horizon moved to dismiss the Complaint on October 9, 2024. (ECF No. 13.) UCI Medical Center opposed on October 21, 2024 (ECF No. 17), and Horizon replied on November 22, 2024 (ECF No. 21). The Court granted Horizon's motion to dismiss without prejudice on May 27, 2025. (Op. Granting Mot. to Dismiss (ECF No. 27).) On June 17, 2025, UCI Medical Center filed its Amended Complaint. (ECF No. 30.) After the Court determined a premotion conference was unnecessary (ECF No. 37), Horizon again moved to dismiss the Amended Complaint (ECF No. 40). UCI Medical center filed an opposition on October 5, 2025 (ECF No. 41), to which Horizon replied on October 20, 2025 (ECF No. 42).

## II.   LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the

pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410,

1426 (3d Cir. 1997) (emphasis original) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

### III.   DECISION

The parties here dispute whether the proper compensation owed to UCI Medical Center for treatment given to three patients was governed by the patient's ERISA health plans, or by an independent contract, implied-in-fact from the conduct of the parties. Horizon requests the Court follow its prior judgment and dismiss UCI Medical Center's claims because "disputes regarding amounts due in connection" with plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA") are subject to a separate "comprehensive civil enforcement scheme that preempts any conflicting state remedy." (ECF No. 40-1 at 8.) UCI Medical Center, however, maintains its "claims are predicated on an independent contractual or quasi-contractual duty," and therefore are not preempted by ERISA. (ECF No. 41 at 21.) Rather, this alleged duty stems from a contract "implied-in-fact" from the terms of the Provider Contracts it signed with third party insurers, such as Anthem Blue Cross and Blue Shield of California. (ECF No. 30 ¶¶ 8–10.) In the alternative, UCI Medical Center argues this same duty arises under the doctrine of *quantum meruit* because Horizon allegedly induced UCI Irvine to act in its benefit by directing patients to use a program where they could present a blue card to out-of-network providers and receive medical care without being exposed to inflated prices (the "Blue Card Program"). (ECF No. 41 at 38.)

The Court has already considered the question of whether UCI Medical Center's claims are preempted by ERISA and found that they were. (ECF No. 27 at 10.) However, the Court granted UCI leave to amend its complaint so that UCI Medical Center could better explain the "Programs, Contracts, and the relationship between the two," as well as the nature of the "course of conduct or industry custom" which gave rise to Horizon's alleged duties. (*Id.*)

Pursuant to the Court's instruction, UCI Medical Center amended its complaint to provide additional details about the Provider Contracts. (ECF No. 30 ¶¶ 10–14.) Specifically, UCI Medical Center alleges the Provider Contracts contain terms pertaining to UCI Medical Center's responsibilities to "Other Payors[,] . . . entities[] utilizing the Managed Care Network(s)/Plan Programs pursuant to an agreement with Anthem" or other insurers.[1] (*Id.* ¶ 10.) UCI Medical Center is allegedly "obligated . . . to medically treat individuals belonging to health plans administered by member companies belonging to either the Blue Cross Blue Shield National Accounts Program, or Anthem's Managed Care Networks Plan Programs." (*Id.* at 12.) UCI Medical Center alleges Horizon is a member of one of these groups. (*Id.*) Despite this new detail, the Amended Complaint continues to provide relatively sparce information regarding the course of conduct between the parties, or the industry custom which, alongside these third-party contracts allegedly gave rise to the implied-in-fact contract that UCI Medical Center alleges governs this case. (*Id.*; see also ECF No. 41 at 5–9 (summarizing the changes to the Amended Complaint).)[2]

---

[1] UCI Medical Center does not provide the Court with a copy of any of the three Provider Contracts in order to comply with confidentiality provisions within those same contracts. Instead, UCI Medical Center has provided excerpts in the text of the Amended Complaint, alongside its interpretation of what the excerpts in question mean. But the interpretation of contracts is a question of law for the Court. *Hess Corp. v. ENI Petroleum US, LLC*, 86 A.3d 723, 727 (App. Div. 2014) ("Contract interpretation is a question of law."). When interpreting clear contract language, "statements of legal conclusions in a pleading receive no weight" including the plaintiff's interpretations or assertion that the terms are ambiguous. *Black Ship, LLC v. Heartland Payment Sys., LLC*, 2024 WL 4210519, at *3 (3d Cir. Sept. 17, 2024) (interpreting an arbitration provision). Because UCI Medical Center's interpretation does not change the Court's analysis, for the purposes of this Motion, the Court will accept UCI Medical Center's characterization of the terms of the Provider Contracts.

[2] UCI Medical Center's Opposition Brief alleges that the industry custom is the "Blue Card Program" itself, and further alleges the program is decades old. (ECF No. 41 at 10.) However, these allegations are not substantively different from the original complaint, which this Court held were not sufficient to support a plausible allegation of an implied-in-fact contract. (ECF No. 27 at 6–7.)

Having reviewed the additional allegations included in UCI Medical Center's Amended Complaint, there are not sufficient allegations to alter this Court's prior holding that UCI Medical Center's claims are preempted under ERISA. (ECF No. 27 at 10.) The Supreme Court has made clear that ERISA is a law of "extraordinary pre-emptive power." *Aetna Health Inc. v. Davilla*, 542 U.S. 200, 211 (2004). As the Court previously explained in its initial opinion dismissing the case, "ERISA provides two kinds of pre-emption against state law claims." (ECF No. 27 at 9 (citing *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 399–400 (3d Cir. 2004)).) The first, 29 U.S.C. § 1132(a) (ERISA § 502(a)), permits "a participant or beneficiary" in an ERISA plan to bring a suit "recover benefits due to him . . . enforce his rights . . . or to clarify his rights to future benefits." ERISA § 502(a)(1)(B). This provision effectively "converts an ordinary state common law complaint" from plan beneficiaries "into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987).

Though by its terms § 502 applies only to the claims of beneficiaries, it also applies to claims of those who "stand in the shoes of the 'participant' or 'beneficiary,'" such as a fiduciary. *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 228 (3d Cir. 2020). Healthcare providers are not authorized to bring claims subject to § 502; however, "a valid assignment agreement allows a healthcare provider . . . to obtain not only the right to benefits due under the plan, but also the capacity to bring suit for non-payment under section 502(a)." *Id.* (citing *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372–73 (3d Cir. 2015).) This form of preemption only applies to providers who have been assigned the patient's benefits, and UCI Medical Center expressly disclaims any such assignment of rights in favor of its implied contract theory. (ECF No. 30 ¶ 6 ("This action is not being brought on behalf of the health plan beneficiaries . . . . Nor does

UCI Medical Center step into the shoes of any of the patients based upon an assignment of benefits.").)

Therefore, the second form of preemption, express preemption under 29 U.S.C.A. § 1144 ("ERISA § 514"), is the one relevant here. ERISA § 514 expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title." It is well established that "relate to" is to be given its "broadest common sense meaning." *Shiffler v. Equitable Life Assur. Soc. of U.S.*, 838 F.2d 78, 81 (3d Cir. 1988) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987)). This broad scope encompasses "not only those [claims] that 'act immediately and exclusively upon ERISA plans,' but also . . . [claims] 'premised on' the plan." *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 230 (3d Cir. 2020) (quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319–20 (2016); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990)). Claims are premised on an ERISA plan where the "claims [are] predicated on the plan" such as "claims for benefits due under a plan," where the plan "is a critical factor in establishing liability," and where the claims "involve construction of the plan . . . or require interpreting the plan's terms." *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 230 (3d Cir. 2020). However, claims which "turn[] largely on legal duties generated outside the ERISA context" may proceed even where they "require[] . . . a cursory examination of the plan provisions." *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 85 (3d Cir. 2012) (quoting *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1472 (4th Cir. 1996)).

### A.    UCI Medical Center has failed to allege an implied contract.

Simply stated, the breach of contract claim in this case may proceed only if UCI Medical Center pleaded facts sufficient to establish an implied contract independent of the ERISA plans. *Id.* However, its allegations of independent obligation are conclusory; the only substantiated

source of any obligation to pay is the Blue Card Program, which is a provision of the ERISA plans themselves. (ECF No. 30 ¶¶ 12–20.) A claim premised on that provision is preempted, as adjudicating it would require construction of the plans. The Amended Complaint therefore fails either way: To the extent UCI Medical Center alleges an independent contract, it has not adequately pleaded one; to the extent it alleges a contract derived from the Blue Card Program, that claim is preempted by ERISA. *Plastic Surgery Ctr., P.A.*, 967 F.3d at 230. Moreover, as pleaded, UCI Medical Center's breach of contract claim also fails either way: to the extent UCI Medical Center alleges an independent contract, it has not adequately pleaded one; to the extent it alleges a contract derived from the Blue Card Program, that claim is preempted by ERISA.

UCI Medical Center maintains its claims stem from "an independent contractual or quasi-contractual duty, and not on the plans." (ECF No. 41 at 21.) Where an independent contract between insurer and provider exists, it may form the basis for a breach of contract claim not otherwise preempted by ERISA. *See, e.g., Plastic Surgery Ctr., P.A.,* 967 F.3d at 229 (noting that contract claims between insurers and out-of-network providers "are not expressly preempted because . . . they arise out of a relationship ERISA did not intend to govern at all"). UCI Medical Center cites to a number of cases in which courts within this district have found independent contracts, written or verbal, to not be preempted by ERISA. (ECF No. 41 at 27 (citing *East Coast Spine Joint and Sports Med. v. Anthem Blue Cross Blue Shield*, Civ. A. No. 22-04841, 2023 WL 3559704 (D.N.J. Apr. 27, 2023) (finding an alleged implied-in-fact contract was not preempted by ERISA); *Gotham City Orthopedics, LLC v. United HealthCare Ins., Co.*, Civ. A. No. 2:21-cv-11313, 2022 WL 111061, at *3 (D.N.J. Jan., 12, 2022) (same)).)

But these cases do little to support UCI Medical Center's argument that such a contract existed between it and Horizon. As Horizon points out, this district has routinely declined to find

an implied contract merely from the authorization of specific services. *See Advanced Orthopedics & Sports Med. Inst., P.C. v. Oxford Health Ins., Inc.*, Civ. A. No. 2:21-cv-1722, 2022 WL 1718052, at *8 (D.N.J. May 27, 2022) (finding a preauthorization of services was not a "freestanding agreement"); *see also Glastein v. Horizon Blue Cross Blue Shield of Am.*, Civ. A. No. 12:7-cv-7983, 2018 WL 3849904, at *3 (D.N.J. Aug. 13, 2018) (preauthorizing "necessary medical services" did not mean the insurer "agreed to pay the usual and customary rates for the medical services provided"). Where the Court has found such a contract to exist, it was because preauthorization was paired with a long-term relationship between the parties or because the insurer allegedly made specific representations that it would reimburse the provider. *See, e.g., Gotham City Orthopedics, LLC v. United Healthcare Ins. Co.*, Civ. A. No. 21-11313, 2022 WL 111061 at *4 (D.N.J. Jan. 12, 2022) (finding an implied contract arose because the insurer "represented or implied that it would cover the surgeries that [the provider] performed"); *accord MedWell, LLC v. Cigna Corp.*, Civ. A. No. 2:20-cv-10627, 2021 WL 2010582, at *1 (D.N.J. May 19, 2021) (finding contract was implied where provider treated patients covered by insurer and was reimbursed "for at least fifteen years" before the insurer chose to "stop[] paying any claims" from the provider).

UCI Medical Center does not allege it had such a long-standing relationship with Horizon, nor that Horizon made any specific representation it would pay UCI Medical Center's preferred rate. (ECF No. 30.) Indeed, the Amended Complaint is clear that Horizon was never contacted by the UCI Medical Center directly. (*Id.* ¶ 39) Instead of contacting Horizon, UCI Medical Center sought authorization from BSC and Anthem. (*Id.*)  In the absence of a direct contract, UCI Medical Center suggests a hazy combination of partial payment and industry custom gave rise to this alleged implied contract. (*Id.* ¶ 38.)

11

"The elements necessary to form an implied-in-fact contract are identical to those required for an express agreement." *Premier Orthopaedic Assocs. of S. NJ, LLC v. Anthem Blue Cross Blue Shield*, 675 F. Supp. 3d 487, 493 (D.N.J. 2023) (applying New Jersey law) (quoting *Matter of Penn Cent. Transp. Co.,* 831 F.2d 1221, 1228 (3d Cir. 1987)). The core question of whether a contract was formed is "offer and acceptance" of terms "sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992) (quoting *Borough of W. Caldwell v. Burrough of Caldwell*, 138 A.2d 402, 409 (N.J. 1958)). Therefore, "if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." *Id.* However, if the conduct of the parties demonstrates a "lack of agreement on critical terms," there has been no "meeting of the minds to create an enforceable contract." *MDC Inv. Prop., L.L.C. v. Marando*, 44 F. Supp. 2d 693, 699 (D.N.J. 1999) (applying NJ contract law).

UCI Medical Center has not alleged facts which could support a finding that Horizon intended to be bound to this alleged contract. The primary facts on which UCI Medical Center relies are the Provider Contracts and preauthorization conversations it had with BSC and Anthem—none of which can ascribe an intent to be bound onto Horizon without some allegation that Horizon knew and approved of being bound by the representations of a third party.[3] (ECF No. 30 ¶¶ 9, 10, 17, 20, 22, 30). UCI Medical Center further argues, "the partial payment that Horizon already made on at least one of the three claims" is conclusive evidence of Horizon's intent to be

---

[3] The ERISA plans Horizon attaches make clear local Blue Cross Blue Shield plans do determine a negotiated price with providers, including UCI Medical Center. (*See* ECF No. 40-4 at 109–10; ECF No. 40-6 at 106–07.) However, the ERISA plan price may be lower (or higher) than the traditional price. (*See id.*) Further, any claim that the UCI Medical Center was underpaid by the terms of the ERISA plans would unavoidably require construction of the ERISA plans themselves, and would therefore be preempted. *Plastic Surgery Ctr., P.A.*, 967 F.3d at 230.

12

bound to this implied contract because it shows UCI Medical Center's "entitlement to reimbursement for medical services provided to the Patient is undisputed." (ECF No. 41 at 26.)

But claiming Horizon partially paid one of the three claims misrepresents Horizon's conduct. (*Id.*) As UCI Medical Center itself acknowledges, Horizon "down-cod[ed]" the claim it paid and rejected two others for being untimely or having an improper rate under their respective ERISA plans. (Am. Compl. Ex. 1 (ECF 30-1).) It is implausible that Horizon intended to pay UCI Medical Center's customary rates and merely "miscalculated the amounts it was obligated to pay" when it outright denied responsibility for certain payments. (ECF No. 30 ¶ 7.) The facts alleged by UCI Medical Center's Amended Complaint clearly show a "lack of agreement on critical terms," such as the amount of payment owed, and the bases upon which Horizon could object or decline claims, and therefore no independent contract was formed. *Marando*, 44 F. Supp. 2d at 699.

UCI Medical Center's argument that this alleged implied contract can be found through industry custom or Horizon's prior conduct fails for the same reason. UCI Medical Center claims that "the Blue Card program scheme, [is] a decades-old industry custom and practice, which places an independent obligation on participants like Horizon to pay Plaintiff the Blue Card network Contract rates." (ECF No. 41 at 10.) According to UCI Medical Center, Horizon has also allegedly "satisfactorily paid on a number of claims submitted by UCI Medical Center . . . under the Blue Card Program." (ECF No. 30 ¶ 14.) This cannot serve as evidence of an ERISA-independent contract, however, because as Horizon points out, the Blue Card Program is a provision of the ERISA plans offered by Horizon. (*See* Horizon's Mot. to Dismiss Ex. B (ECF No. 40-4) at 109; *see also* Horizon's Mot. to Dismiss Ex. C (ECF No. 40-6) at 13.)

In response, UCI Medical Center argues the Court may not consider the ERISA plans governing the disputed transactions when determining whether its claims are preempted. (ECF No. 41 at 1–2.) However, the Court must determine "whether the claims as pleaded require impermissible construction or interpretation of the plans" as a matter of law before the claim is permitted to proceed. *Plastic Surgery Ctr., P.A.*, 967 F.3d at 230. Even where the Court rules the claims are not preempted, that inquiry entails "cursory review of [the patients'] plan[s]." *Id.* at 233. For that purpose, the Court "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Though it objects to the Court's consideration of the plans, UCI Medical Center has not contested the authenticity of the plans attached or disputed that these plans correspond to the patients for whose treatment UCI Medical Center seeks reimbursement—it has simply chosen to exclude them from the Amended Complaint. (ECF No. 41 at 1–2.) UCI Medical Center may not "evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach the [plans] to the complaint or to incorporate [them] by reference." *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991); *see also Burlington Coat Factory*, 114 F.3d at 1426.

The Blue Card Program is a feature of the ERISA plans Horizon has attached to its Motion.[4] (See ECF No. 40-4 at 61; ECF No. 40-6 at 3.) Consistent with UCI Medical Center's

---

[4] One of the three plans, called the Honeywell plan, does contain provisions concerning the patients approaching out-of-network providers for care. (ECF No. 40-3 at 22.) The Honeywell plan is an ERISA plan. (*Id.*) But the Amended Complaint is silent as to whether the Honeywell plan is part of the Blue Card Program, whether there are special conditions attached to claims from patients covered by the Honeywell program, or whether the Honeywell program may be considered alongside the other programs at issue. (ECF No. 30.)

14

pleading, the ERISA plans discuss a relationship between Horizon and a series of other geographic Blue Cross entities which they refer to as "Host Blues." (*See* ECF No. 40-4 at 109–10; ECF No. 40-6 at 106–07.) It is Host Blues that determine a negotiated price, which is not necessarily the same as the traditional and customary rate. (*See id.*) The plans describe three possible pricing schemes: (1) the "actual price . . . in effect at the time the claim is processed without any other increases or decreases;" (2) an "estimated price[,]" which is "a negotiated rate . . . reduced or increased by a percentage to take into account certain payments negotiated with the provider and other claim-and-non-claim-related transactions," such as anti-fraud measures; and (3) an "average price" based on "aggregate payments negotiated by the Host Blue with all of its healthcare providers." (*See id.*) UCI Medical Center argues there is an industry custom of paying its full traditional price for services but alleges no facts to support this conclusion—certainly no facts to separate this supposed custom from the ERISA plans and their specific inter-plan agreements. (ECF No. 30.) Any attempt to determine if and to what degree UCI Medical Center was underpaid pursuant to the Blue Card Program would, therefore, necessarily "involve construction of the plan . . . or require interpreting the plan's terms," and therefore be preempted. *Plastic Surgery Ctr., P.A.*, 967 F.3d at 230.

UCI Medical Center has failed to plead facts sufficient to establish that an implied contract independent of the parties' ERISA plan obligations was formed between it and Horizon, and its breach of contract claim is dismissed on that basis. Alternatively, to the extent UCI Medical Center premises its claim on the Blue Card Program, that claim is preempted by ERISA because the Blue Card Program is a provision of the ERISA plans governing the patients' benefits, and adjudicating such a claim would require construction of those plans.

**B.      UCI Medical Center's has failed to plead a *quantum meruit* claim.**

In the alternative, UCI Medical Center has alleged a *quantum meruit* claim. (ECF No. 30 ¶ 53.) A claim for *quantum meruit* cannot coexist with a claim to recover under a breach of contract theory because *quantum meruit* is premised on circumstances where "absent a manifest intention to be bound, one party has conferred a benefit on another" and it would be "unjust to deny recovery." *Comprehensive Spine Care, P.A. v. Oxford Health Insurance, Inc.*, Civ. A. No. 18-10036, 2018 WL 6445593, *6 (D.N.J. 2018). However, "courts have held that an insurance company 'derives no benefit' from services provided to an insured for purposes of a *quantum meruit* claim." *Id.* at *6 (quoting *Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*, Civ. A. No. 11-2775, 2012 WL 762498, at *8 (D.N.J. Mar. 6, 2012)). UCI Medical Center responds that is has alleged "a litany of benefits . . . accru[ed] to Horizon" and this allegation "must be taken as true." (ECF No. 41 at 39.) This is incorrect. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Furthermore, UCI Medical Center does not cite to a single case where this Court or the Third Circuit has held that providing care to a patient confers a benefit on the insurer for the purposes of *quantum meruit*. (*See generally* ECF No. 41.)

Therefore, UCI Medical Center has not stated a claim for *quantum meruit*, and its claim is dismissed.

**IV.    CONCLUSION**

For the reasons set forth above, and for good cause having been shown, Horizon's Motion

to Dismiss the Amended Complaint is **GRANTED**, and both of UCI Medical Center's claims are

**DISMISSED WITHOUT PREJUDICE**.

**Date: May 13th, 2026**                                   */s/ Brian R. Martinotti*
                                                          **HON. BRIAN R. MARTINOTTI**
                                                          **UNITED STATES DISTRICT JUDGE**